UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN KEITH ALFORD,                               Case No. 1:11-cv-862
  Petitioner,

               Beckwith, J.
 vs.                                         Bowman, M.J.

WARDEN, LEBANON                        **REPORT AND**
CORRECTIONAL INSTITUTION,               **RECOMMENDATION**
  Respondent.

   Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,

challenging certain parole revocation proceedings initiated by the Ohio Adult Parole Authority

(OAPA). (Doc. 1). This matter is before the Court on petitioner's motion for emergency

injunctive relief. (Doc. 4). Also pending before the Court for ruling is respondent's motion to

dismiss the petition as successive under 28 U.S.C. § 2244(b) or, alternatively, on the ground that

petitioner has not exhausted available state court remedies. (Doc. 8). Petitioner has filed briefs

opposing respondent's motion to dismiss. (Docs. 10-11).

## I. PROCEDURAL BACKGROUND

### Background Leading Up To Petitioner's Initial Federal Habeas Petition

   In 1984, petitioner was convicted following a jury trial in the Montgomery County, Ohio,

Court of Common Pleas of one count of aggravated robbery with firearm specification and three

counts of robbery. (*See* Doc. 8, Ex. 2). He was sentenced to consecutive terms of imprisonment

of three (3) to fifteen (15) years for each robbery offense; five (5) to twenty-five (25) years for

the aggravated robbery offense; and three (3) years of actual incarceration for the firearm

specification. (*Id.*). Petitioner was admitted into state custody on April 3, 1984, pursuant to a

sentence with an "Expiration of Max Sentence" date of November 21, 2056.  (*See id.*, Exs. 2, 3).

On December 12, 1999, petitioner was released on parole.  (*Id.*, Ex. 4).  It appears from the record that less than six months later, on June 6, 2000, the OAPA declared petitioner to be a "parole violator at large" based on a warrant issued by federal authorities for armed bank robbery and firearms offenses.  (*See id.*, Ex. 13, Appendix D & Exs. 29, 30; *see also* Doc. 1, p. 3; Doc. 10, p. 3; Doc. 11, p. 2).  It also appears from the record that on June 22, 2000, petitioner was arrested and placed in the Montgomery County Jail, and soon thereafter, on July 11, 2000, was indicted on the federal criminal charges in the United States District Court for the Southern District of Ohio, Western Division.  (Doc. 8, Ex. 5 & Ex. 13, p. 5).  Petitioner was subsequently convicted of the federal offenses and, on December 12, 2002, was sentenced to an aggregate prison term of 144 months in a federal penitentiary.  (*See id.*, Ex. 6, Entry 98).

As a result of petitioner's conviction on the federal criminal charges, the OAPA issued a state warrant on January 28, 2003, for petitioner's arrest as a "release violator."  (*See id.*, Ex. 7).  In a letter dated March 21, 2003, the OAPA forwarded the warrant to the federal prison where petitioner was incarcerated and requested that a detainer be placed in petitioner's file.  (*See id.*).  On March 24, 2003, the United States Department of Justice informed the OAPA that a detainer had been filed against petitioner and that his release from federal prison was "tentatively scheduled for 12-05-2010 via Good Conduct Time Release."  (*Id.*, Ex. 8).

Over two years later, on July 19, 2005, petitioner filed a *pro se* motion with the trial court in the Montgomery County criminal case requesting "Disposition And Dispensation Of Detainer/All Pending Charges."  (*Id.*, Ex. 9).  Specifically, petitioner requested that the OAPA warrant be dismissed "for failure to follow applicable procedures governing parole violations

2

hearings and Interstate Agreement On Detainers" (IAD), with due regard to the parolee's "right to a fast and speedy resolution and just accounting and finalizing of any open, pending charge(s)/accusations." (*Id.*). On July 22, 2005, the trial court entered an order overruling petitioner's motion. (*Id.*, Ex. 10).

On August 2, 2005, petitioner filed another *pro se* motion with the trial court in the Montgomery County criminal case, requesting the dismissal of the parole violator warrant and removal of the detainer issued by the OAPA. (*Id.*, Ex. 11). Petitioner alleged in the motion that he was arrested in June 2000 on the federal criminal charges and housed in the Montgomery County Jail for approximately thirty months from the time of his arrest until his sentencing in December 2002 in the federal criminal case. (*Id.*). Petitioner further alleged that since he was available to the OAPA at that time, he should have been served with a "Notice of Violation" within ten days of his arrest, and a hearing should have been held within fifteen days "after service of violation papers" followed by an on-site parole violation hearing within sixty days thereafter. (*Id.*). On August 5, 2005, the trial court denied petitioner's motion on the ground that it had "no jurisdictional ability to deal with [petitioner's] concerns regarding parole." (*Id.*, Ex. 12).

Respondent states that petitioner did not pursue an appeal in the state courts from the trial court's July 22 and August 5, 2005 rulings.

**First Federal Habeas Petition**

Over three years later, on August 13, 2008, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Northern District of Ohio. (*Id.*, Ex. 13). In his petition, filed as Case No. 4:08cv1963 (N.D. Ohio) (Gaughan, J.;

3

Vecchiarelli, M.J.), petitioner alleged the following as the sole ground for relief:

> **Ground One:**  There is an unlawful detainer lodged against me.  Petitioner respectfully request[s] that the Ohio Adult Parole Authority dismiss the warrant against petitioner as said detainer prevents petitioner from continuing the process of rehabilitation by attending the Life Connections Program which is a religious based program.
>
> **Supporting Facts:**  On March 18th, 2003 a letter was sent to Ohio Adult Parole Authority regarding a detainer clarification. . . .  Adult Parole Authorities placed a detainer against me in spite of my being available to Adult Parole Authorities for a thir[t]y month period from June 22nd, 2000 until December 17, 2002 and thereby violat[ed] the standards governing a prompt notice within 10 days and hearing within 15 of notice for final resolution of alleged violation.

(*Id.*, pp. 4-5).

On November 8, 2008, the district court issued a Memorandum Opinion and Order dismissing petitioner's habeas corpus petition.  (*Id.*, Ex. 14).  The court ruled that petitioner was "not entitled to a speedy resolution of the detainer warrant through the IAD," because the speedy trial provision contained in the federal statute applies only when an "untried indictment, information or complaint" is the basis for the detainer and not to "detainers based on parole or probation violation charges."  (*Id.*, p. 4).

The district court also rejected petitioner's "secondary argument" attacking the OAPA's "alleged failure to timely conduct a parole revocation hearing."  (*See id.*, pp. 5-6).  The court reasoned that although the Supreme Court noted in *Morrissey v. Brewer,* 408 U.S. 471 (1972), that due process requires that a parole revocation hearing be held within a "reasonable time after the parolee is taken into custody," petitioner was "not presently in the custody of the State of Ohio."  (*Id.*, p. 5).  The court stated that only when petitioner was released from his federal detention to Ohio would *Morrissey*'s minimum requirements of due process for parole revocation hearings be triggered, entitling petitioner "to be heard and present evidence showing

4

he did not violate his parole conditions or, if he did, what circumstances in mitigation suggest the violation does not warrant revocation." (*Id.*, pp. 5-6).  Finally, citing *Moody v. Daggett*, 429 U.S. 78, 86, 88 n.9 (1976), the court held that the detainer lodged against petitioner did not implicate due process concerns.   The court reasoned: "The mere fact that [the detainer] may have an adverse impact on a prisoner's classification or his eligibility for institutional programs is not sufficient to invoke due process. . . .  Therefore, [petitioner's] claim that he is entitled to participate in the LCP based on the adverse effects of the detainer lacks merit." (*Id.*, p. 6).

Petitioner appealed to the United States Court of Appeals for the Sixth Circuit.  (*Id.*, Ex. 15).  On June 19, 2009, the Sixth Circuit affirmed the denial of petitioner's habeas corpus petition "for the reasons stated by the district court;" the court continued in pertinent part:

> The Supreme Court has held that the IAD is intended to afford speedy disposition of untried indictments, and is not applicable to parole violations.  *Carchman v. Nash*, 473 U.S. 716, 725-28 (1985).  Furthermore, a preliminary hearing is not required when a parolee has been convicted of a subsequent offense; a hearing on the parole violation can be conducted when the prisoner is taken into custody on the parole violation detainer.  *Moody v. Daggett,* 429 U.S. 78, 86 (1976). . . . Finally, an adverse impact on eligibility for institutional programs from a parole violation detainer does not invoke due process protections.  *Moody*, 429 U.S. at 88 n.9.

(*Id.*, p. 2).  Petitioner filed a petition for rehearing en banc, which was denied.  (*Id.*, Exs. 17-18).

### Subsequent State Proceedings

On November 30, 2009, petitioner filed a *pro se* motion with the trial court in the Montgomery County criminal case, requesting release from parole supervision on the ground that he was not properly notified at sentencing of the "mandatory nature and duration" of his parole supervision.  (*See id.*, Ex. 19).  On March 3, 2010, the trial court denied the motion.  (*Id.*, Ex. 20).  Respondent states that petitioner did not pursue an appeal in the state courts from that

decision.  (*Id.*, Brief, p. 5).

Ten months later, on January 7, 2011, petitioner was released from federal custody and returned to Ohio under the OAPA's supervision.  (*Id.*, Ex. 29).  At the OAPA's request, the Ohio Department of Rehabilitation and Correction calculated and applied petitioner's "lost time" (from June 6, 2000, when petitioner was declared a "parole violator at large," to January 7, 2011, when he was returned to Ohio as a "technical parole violator") to create a new "maximum expiration of sentence" date of June 4, 2067.  (*Id.*, Ex. 30).  On January 13, 2011, petitioner was provided a Notification of Release Violation Hearing scheduled for February 7, 2011.  (*Id.*, Ex. 31).  At the February 7, 2011 hearing, it was determined that "violations of the Conditions of Release had been committed," and petitioner's parole was revoked.  (*See id.*, Ex. 32).  The hearing officer also recommended to the Parole Board that petitioner "serve 18 months of the sentence from the availability date before again becoming eligible for parole release consideration."  (*Id.*).  The recommendation was approved by the Parole Board on March 20, 2011, and petitioner was notified that he would "receive subsequent release consideration at a hearing in 7/2012."  (*See id.*, Ex. 23, Appendix I).

### Fed. R. Civ. P. 60(B) Proceedings

On July 16, 2010, *before* petitioner's release from federal custody to face the state parole violation charges, petitioner filed a motion pursuant to Fed. R. Civ. P. 60(B)(4)(6) in the federal habeas action filed in the Northern District of Ohio, Case No. 4:08cv1963, requesting relief from the November 8, 2008, order dismissing the habeas petition.  (*Id.*, Ex. 21).  On August 2, 2010, the district court denied the motion on the ground that it was divested of jurisdiction when petitioner appealed the November 8, 2008, ruling to the Sixth Circuit.  (*Id.*, Ex. 22).

6

Petitioner appealed to the United States Court of Appeals for the Sixth Circuit, and in a brief filed on May 26, 2011, *after* his parole was revoked, petitioner asserted the following claims:

> 1.  Denial of request for final resolution on detainer in timely manner extended appellant's sentence.
>
> 2.  Appellant was never sentenced to a term of parole after release.  (Order 3-84).
>
> 3.  Appellant[']s sentence under Case No. 83CR2225 is now illegal and no longer applies under Senate Bill 2, July 1st, 1996.

(*Id.*, Ex. 23).  Petitioner attached documents from the parole revocation proceedings as exhibits supporting his claims for relief.  (*Id.*, Appendix I).  In addition, on June 17, 2011, petitioner filed a "Motion For Judicial Notice Of Adjudicative Facts," which contained the following statements of "adjudicative facts:"

> 1. That appellant was housed in the Montgomery County Jail from June 22nd 2000 until December 17th, 2002 (30 months) and was at all times available to Adult Parole Authority to conduct prompt notice and timely hearing. . . .
>
> 2.  That appellees failed to comply with appellant's repeated request[s] for final resolution, thereby triggering strict adher[e]nce to Interstate Agreement On Detainers.
>
> 3.  By failing to comply with appellant[']s repeated request[s] for final resolution, appellant[']s sentence has been extended an additional 24 months. . . .
>
> 4.  The new parole regulations violate Ex Post Facto Clause. . . .
>
> 5.  That appellant has never been sentenced to a term of parole release in March 1984 judgment order. . . .
>
> 6.  That relief under 28 U.S.C. 2241 is cognizable for appellant[']s relief, since he was entitled to a speedier release. . . .

(*Id.*, Ex. 24).

On September 1, 2011, the Sixth Circuit affirmed the district court's decision to deny

petitioner's motion for relief from judgment; the circuit court reasoned in pertinent part:

> In his brief on appeal, Alford reasserts the claims from his original petition. He also takes issue with the parole revocation hearing he received when he was transferred to state custody earlier this year, which resulted in an eighteen-month sentence.
>
> The district court properly denied Alford's motion for relief from judgment. Absent exceptional circumstances such as a change in controlling law, the district court lacked the power to revisit the judgment that was affirmed by this court. . . . Even if the district court could consider the motion, moreover, it was clearly untimely and did not present any new arguments that had not been previously considered and rejected.
>
> We need not address the issues raised for the first time in Alford's appellate brief regarding his 2011 parole revocation. . . .

(*Id.*, Ex. 26). Petitioner filed a motion for rehearing en banc, which was denied. (*See id.*, Exs. 27-28).

### Current Federal Habeas Proceeding

In December 2011, petitioner filed the instant federal habeas corpus petition. (Doc. 1).

Petitioner alleges three grounds for relief:

> **Ground One:** The passage of four months without a determination having been made by Pardon and Parole Commis[s]ion as to whether parolee was a violator of his parole was unreasonable and petitioner was entitled to be released from custody under the terms and conditions of his original parole (O.R.C. 2965.21) Andersons O.R.C. Title 29 October 1st, 1953 through December 31, 1986 for offenses committed prior to July 1, 1996.
>
> **Ground Two:** Petitioner is entitled to have the period of his incarceration in the Montgomery County Jail during which he was a declared parole vio[]lator credited to his time served.
>
> **Ground Three:** The new parole guidelines create a substantial "risk" of incarceration time the prisoner must serve and violate the Ex Post Facto Clause of the United States Constitution.

(Doc. 1).

8

On February 2, 2012, petitioner filed a motion for "emergency injunctive relief." (Doc. 4). In the motion, petitioner requests that "he be given full credit for the thirty (30) months in county jail while declared a parole violator;" that "he be released immediately under the same terms and agreement of his original parole;" and that the OAPA "adjust [its] records to reflect the same." (*Id.*, pp. 3-4).

Respondent has filed a motion to dismiss the petition. (Doc. 8). Respondent contends that the petition should be dismissed or transferred to the Sixth Circuit as a successive petition within the meaning of 28 U.S.C. § 2244(b) because the claims alleged in Grounds One and Three of the petition either were or could have been raised in petitioner's initial habeas petition filed in the Northern District of Ohio. (*Id.*, pp. 7-11). Respondent also alternatively argues that the petition should be dismissed because petitioner has not exhausted the state remedies of a petition for writ of mandamus or writ of habeas corpus, which are available for challenging parole revocation decisions. (*Id.*, pp. 11-12). Petitioner opposes respondent's motion to dismiss. (Docs. 10-11).

## II. OPINION

### A. Ground One Is Successive Within The Meaning Of 28 U.S.C. §2244(b)(1) And, Therefore, Must Be Transferred To The Sixth Circuit For Authorization

Pursuant to 28 U.S.C. § 2244(b)(1), the federal district court must dismiss a claim presented in a second or successive habeas corpus petition that was raised in a prior petition. In addition, the court must dismiss a claim presented in a second or successive petition, which the petitioner did not include in the prior petition, unless: (1)(a) petitioner shows the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable; or (b) the factual basis for the claim

could not have been discovered previously through the exercise of due diligence; **and** (2) the facts would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2244(b)(2).

Before the district court may consider a successive petition, the petitioner must first request and obtain authorization for such consideration from the court of appeals. 28 U.S.C. § 2244(b)(3). The court of appeals may authorize the district court to consider a successive petition only if petitioner makes the *prima facie* showing described above. *Id.* The Sixth Circuit has held that a §2241 petition filed by a prisoner in custody pursuant to a state court judgment must comply with the gate-keeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996), which include the restriction set forth in 28 U.S.C. § 2244(b) prohibiting the filing of successive petitions absent authorization from an appellate court. *See, e.g., Rittenberry v. Morgan*, 468 F.3d 331, 336-37 & n.3 (6th Cir. 2006) (and cases cited therein) (joining a number of other circuit courts in holding that § 2244(b) "applies to any habeas corpus petition seeking relief from custody pursuant to a state court judgment"); *see also In re Marsch*, 209 F. App'x 481, 482-83 (6th Cir. 2006) (applying *Rittenberry* holding to a §2241 petition challenging a state parole board decision).

The subsequent petition must relate to the same state judgment under attack in the prior petition to be "successive" within the meaning of the statute. *See In re Page*, 179 F.3d 1024, 1025 (7th Cir. 1999) (and cases cited therein). The Supreme Court has held that a habeas corpus petition is not successive and, therefore, § 2244(b) does not apply when it is the first application challenging a new judgment that occurs between habeas proceedings. *Magwood v. Patterson*, __

10

U.S. __, 130 S.Ct. 2788, 2796 (2010). In addition, not all subsequent petitions relating to the same state judgment are considered successive. *See Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998). Otherwise, "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id.* at 645.

Courts have held that a later petition does not constitute a successive petition within the meaning of the statute where the claim was raised in the first petition but was dismissed as premature, *see id.*; the first petition was dismissed without prejudice for failure to exhaust state court remedies, *see Slack v. McDaniel,* 529 U.S. 473, 485-86 (2000); *Carlson v. Pitcher,* 137 F.3d 416 (6th Cir. 1998); or the first petition was dismissed because petitioner failed to either pay the filing fee or provide proper support for his application for pauper status, *see Stewart,* 523 U.S. at 645 (citing *Marsh v. United States District Court for the Northern District of California,* No. C-94-0581-VRW, 1995 WL 23942 (N.D.Cal. Jan. 9, 1995)). In all of those contexts, the district court had jurisdiction to consider the subsequent petitions without first obtaining authorization from the court of appeals, because the prior dispositions were not "on the merits." *See Slack,* 529 U.S. at 485-86; *Carlson,* 137 F.3d at 419; *Camarano v. Irvin,* 98 F.3d 44, 46-47 (2nd Cir. 1996).

In contrast, when a prior petition is dismissed because the petitioner procedurally defaulted his claims in state court, the dismissal is considered "on the merits." In such a case, the prisoner must obtain authorization from the court of appeals pursuant to § 2244(b)(3) before filing a subsequent federal habeas application. *In re Cook,* 215 F.3d 606, 608 (6th Cir. 2000); *Carter v. United States,* 150 F.3d 202, 205-06 (2nd Cir. 1998).

Similarly, when the prior petition is dismissed on the ground that it is barred by the

11

statute of limitations, the dismissal is an adjudication of the merits of the claims, and petitioner

must obtain prior authorization from the court of appeals entitling him to file a subsequent

petition for habeas corpus relief.  *See, e.g., McNabb v. United States,* 576 F.3d 1028, 1030 (9th

Cir. 2009); *Murray v. Greiner,* 394 F.3d 78, 81 (2nd Cir. 2005); *Altman v. Benik,* 337 F.3d 764,

766 (7th Cir. 2003); *Staffney v. Booker,* No. 2:09cv14553, 2009 WL 4506425, at *1 (E.D. Mich.

Nov. 25, 2009) (transferring the petition to the Sixth Circuit as a successive petition).[1]

In Ground One of the instant petition, petitioner essentially claims that he is entitled to be

released "from custody under the same terms and conditions of his original . . . parole" because,

even though he was jailed and thus available in Ohio for a thirty-month period from June 2000 to

December 2002, the OAPA failed to initiate parole revocation proceedings "within a reasonable

time" after petitioner was arrested and declared to be a "parole violator at large" in June 2000.

(*See* Doc. 1, pp. 3-5).  The claim is clearly successive within the meaning of 28 U.S.C. §

2244(b)(1) because petitioner asserted the same argument in challenging the detainer lodged by

the OAPA in 2003, within a few months after his conviction and sentence on the federal criminal

charges, as the sole ground for relief in his habeas petition filed in 2008 in the Northern District

of Ohio (Case No. 4:08cv1963).  The claim was adjudicated "on the merits" in the prior habeas

proceeding to the extent that both the district court and Sixth Circuit rejected petitioner's ground

for relief in the first action because petitioner was not entitled under the IAD to a "speedy

resolution of the detainer warrant;" the detainer in and of itself did not implicate due process

concerns; and the due process requirements of *Morrissey* were not applicable until petitioner's

---

[1]*Contrast Gonzalez v. Crosby,* 545 U.S. 524, 535-36 (2005) (a motion for relief from judgment under Fed.
R. Civ. P. 60(b), which "challenges only the District Court's previous ruling on the AEDPA statute of limitations, ...
is not the equivalent of a successive habeas petition").

12

release from federal custody to Ohio on the detainer.  (*See* Doc. 8, Exs. 14-15).  Although petitioner's parole was not revoked until 2011, petitioner's claim in Ground One does not constitute an attack on a "new" state judgment, but rather involves the same issues that faced the prior federal habeas court in addressing petitioner's claim attacking the detainer lodged in 2003 by the OAPA.

On the other hand, as respondent has conceded, plaintiff has asserted a claim in Ground Two of the petition challenging his parole revocation "sentence," which could not have been raised until after the parole revocation decision was rendered in 2011.  (*See* Doc. 8, Brief, 10). Respondent has argued that Ground Three is also successive to the extent that petitioner could have asserted a claim in the prior federal habeas action challenging application of the "new parole guidelines" enacted in 1992 and 1998 as a violation of the Constitution's Ex Post Facto Clause.  However, out of an abundance of caution, the undersigned assumes, without deciding, that the claim is not successive to the extent petitioner has alleged that the 2011 parole revocation proceedings were conducted "under the new parole guidelines," and that when he is next considered for parole release, application of the "new" guidelines "will more likely result in increased incarceration."  (*See* Doc. 10, p. 8).

Therefore, in sum, the undersigned finds that the claim alleged in Ground One, which was raised and rejected on the merits in the prior federal habeas proceeding filed in the Northern District of Ohio, is successive within the meaning of 28 U.S.C. § 2244(b).  This Court lacks jurisdiction to consider the claim without petitioner's first obtaining authorization from the Sixth Circuit.

When a prisoner has filed a successive petition for habeas corpus relief in the district

court without first obtaining authorization from the Court of Appeals, the district court in the interest of justice pursuant to 28 U.S.C. § 1631 is required to transfer the case to the Sixth Circuit for consideration as required under § 2244(b)(3). *See In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997) (citing *Liriano v. United States,* 95 F.3d 119, 122 (2nd Cir. 1996)). This is a type of "mixed petition" containing both a claim that is clearly successive and claims that do not appear to be successive within the meaning of 28 U.S.C. § 2244(b). *Cf. McCall v. Voorhies*, No. 2:08cv117, 2009 WL 249064, at *7 (S.D. Ohio Feb. 2, 2009) (Kemp, M.J.), *adopted*, 2009 WL 415247 (S.D. Ohio Feb. 18, 2009) (Frost, J.). In *McCall*, the court transferred the successive claims to the Sixth Circuit and dismissed the non-successive claims "on the merits" based on the alternative ground that the claims were procedurally defaulted. *See id.* at *7-9. Similarly here, the undersigned concludes that the successive claim in Ground One, based on the OAPA's alleged failure to initiate parole revocation proceedings in a reasonably timely manner after petitioner was declared a parole violator in June 2000, should be transferred to the Sixth Circuit for review and determination whether the district court should be granted authorization to entertain it. The undersigned will proceed to address petitioner's remaining claims in light of respondent's alternative argument that the petition should be dismissed on exhaustion grounds.

### B. Exhaustion Should Be Excused, And The Remaining Claims In Grounds Two and Three Should Be Dismissed With Prejudice Because They Plainly Lack Merit

Respondent contends that the petition is subject to dismissal on exhaustion grounds because petitioner has not pursued state court remedies that are available in Ohio to challenge parole decisions. Although there is a strong presumption in favor of requiring the exhaustion of available state court remedies, the exhaustion requirement is not jurisdictional and may be excused in certain circumstances. *Granberry v. Greer,* 481 U.S. 129, 131 (1987). Exhaustion

14

has been excused in cases where the unexhausted claims are plainly meritless, or the petition does not even raise a colorable federal claim, and it therefore is in the interests of the parties and judicial economy to promptly address the merits of the petition. *See id.* Moreover, 28 U.S.C. § 2254(b)(2) expressly provides that an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies.

Here, the exhaustion requirement should be excused because it appears clear from the record that petitioner's remaining claims for relief in Grounds Two and Three of the petition are plainly lacking in merit.

Petitioner alleges in Ground Two that his parole revocation "sentence" should have included credit for the thirty-month period that he was incarcerated in the Montgomery County Jail after he was arrested on the federal criminal charges and declared a "parole violator at large" in June 2000. However, petitioner was placed in custody at that time due to his arrest and indictment in the federal criminal matter. Indeed, the sentence that ultimately was imposed in December 2002 upon petitioner's conviction for the federal armed robbery and firearms offenses included "credit" for the pre-sentence jail-time. (*See* Doc. 8, Ex. 6, Entry 98). Although petitioner was incarcerated in an Ohio jail during that time period, petitioner was actually in the custody of federal authorities, not the State of Ohio. Therefore, the OAPA did not commit any error in failing to consider the Montgomery County jail-time, which had already been credited to petitioner in his federal sentence, in determining petitioner's parole revocation "sentence" of eighteen months. To the contrary, it was proper for the Ohio Department of Rehabilitation and Correction to include the thirty-month period in the "lost time" calculation, as reflecting the period of time petitioner was in the custody of federal authorities as opposed to the State's

15

custody, for purposes of recalculating petitioner's "maximum expiration of sentence" date from November 21, 2056 to June 4, 2067.

In any event, in this federal habeas case, the court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Petitioner's allegations in Ground Two simply fail to rise to the level of a constitutional claim that may be addressed in this proceeding.  *Cf. Wombles v. Cabinet for Health & Family Services*, Civ. Act. No. 08-CV-159-WOB, 2008 WL 4443019, at *3 n.1 (E.D. Ky. Sept. 26, 2008) (noting the Ninth Circuit's decision in *McCowan v. Nelson*, 436 F.2d 758 (9th Cir. 1970), wherein it was determined that the issue whether the state parole board was required to credit the petitioner with time spent in jail while awaiting extradition was a "state law question not within competence of federal habeas court").

In Ground Three, petitioner contends that because he was convicted and sentenced before the "new" parole guidelines were enacted, the OAPA has violated the Constitution's Ex Post Facto Clause by applying those guidelines to his parole revocation and in determining whether he should be released on parole in the future.

With respect to the parole revocation proceedings, petitioner was entitled to receive a meaningful parole revocation hearing in accordance with minimal due process standards enunciated by the Supreme Court in *Morrissey* because he was convicted and sentenced in 1984, prior to changes in the law in 1992 limiting the OAPA's discretion in cases where a parolee has

been convicted of a new felony while on parole. *See Kellogg v. Shoemaker*, 46 F.3d 503, 509-10 (6th Cir. 1995). It appears clear from the record, however, that contrary to petitioner's contention, the OAPA complied with *Morrissey* by providing petitioner with a hearing within a reasonable time after he was taken into state custody upon his release from federal prison in January 2011. Petitioner was notified on January 13, 2011 of the parole violation charges and of his rights at the scheduled parole violations hearing, and was provided the opportunity to be heard before a neutral and detached Parole Board on February 7, 2011, in order to show, "if he [could], that he did not violate the conditions [of parole], or, if he did, that circumstances in mitigation suggest[ed] that the violation d[id] not warrant revocation," *Morrissey*, 408 U.S. at 488-89. (*See* Doc. 8, Ex. 23, Appendix I). In addition, after the hearing was held, petitioner was provided with "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole," *Morrissey*, 408 U.S. at 489. (*See id.*). Although petitioner has suggested that he was not accorded due process because his request for representation by counsel was denied at the hearing (*see* Doc. 10, p. 8), the Supreme Court made it clear in *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973), that the State is not constitutionally obligated to provide counsel in all probation or parole revocation cases; instead a "case-by-case" approach is to be utilized, which the OAPA apparently employed by denying petitioner "representation following *Gagnon* screening." (*See* Doc. 8, Ex. 23, Appendix I, "Notice of Findings of Release Violation Hearing"). Because it thus appears clear from the record that the OAPA did not apply the "new" parole regulations enacted in 1992 in the parole revocation proceedings that were conducted in this case, petitioner is unable to prevail on his claim that the OAPA committed an *ex post facto* violation under *Kellogg*. *Cf. Kellogg*, 46 F.3d at 509 ("Obviously, the new regulations cannot be

17

deemed to be an *ex post facto* violation as to those inmates whose paroles were revoked after a hearing under the old regulations, because the new parole regulations were not applied to them.").

To the extent petitioner also appears to claim that the OAPA violated the Ex Post Facto Clause by applying "new parole guidelines" enacted in Ohio Senate Bill 2 to his parole revocation, petitioner has not alleged any facts even remotely suggesting that those guidelines were applied in this case.  In *Michael v. Ghee*, 498 F.3d 372, 373-74 (6th Cir. 2007), the Sixth Circuit described the applicability of Senate Bill 2 to inmates, like petitioner, who were sentenced prior to July 1, 1996:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence.  An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior.  Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA").  It determined when release was appropriate for each inmate.  In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. . . .  Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge.  The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme. . . .

> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996.  The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole:  (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole.  The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense.  Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

In *Michael*, the Sixth Circuit held that an inmate can challenge the retroactive application of the 1998 Senate Bill 2 guidelines where they create a "sufficient risk of increasing the

18

measure of punishment attached to the covered crimes."  *Id.* at 384 (quoting *Garner v. Jones,* 529 U.S. 244, 250 (2000)).  The court stated that an *ex post facto* violation can be shown in one of two ways.  First, an *ex post facto* violation is established by demonstrating "the guidelines, on their face, show a significant risk of increased incarceration."  *Id.*  "Second, when the guidelines do not by their own terms show a significant risk, plaintiffs 'must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines].'"  *Id.* (quoting *Garner*, 529 U.S. at 255).

Petitioner has not proffered or cited any evidence in the record to suggest that the OAPA even considered the Senate Bill 2 guidelines in rendering its decision in 2011 to revoke petitioner's parole and impose a sentence of eighteen months before petitioner would next be considered for parole release.  In any event, even assuming solely for the sake of argument that the guidelines were considered, petitioner has not alleged facts showing that the guidelines, on their face, created a significant risk of increased incarceration or, as applied by the OAPA, resulted in a longer period of incarceration than under earlier guidelines.

Finally, to the extent petitioner claims that the guidelines will be applied and "are likely to result in increased incarceration" when he is next considered for parole (*see* Doc. 11, p. 6), he has failed to state an actionable claim based on a live case or controversy.  Under Article III of the Constitution, the courts' jurisdiction is confined to "real and substantial controvers[ies] admitting of specific relief through a decree of conclusive character."  *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  "To be cognizable in a federal court, a suit 'must be definite and concrete, touching the legal relations

of parties having adverse legal interests. . . .  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Rice*, 404 U.S. at 246 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)).  At this juncture, any opinion regarding a future action that the OAPA may or may not take in deciding whether or not to grant petitioner parole would be merely advisory in nature.  Therefore, the Court lacks jurisdiction to consider such a claim.

Accordingly, in sum, the Court concludes that the exhaustion requirement should be excused with respect to the remaining claims for relief alleged in Grounds Two and Three of the petition, and **RECOMMENDS** that respondent's motion to dismiss (Doc. 8) be **GRANTED** to the extent that the claims should be dismissed with prejudice on the ground that they are plainly lacking in merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Respondent's dispositive motion (Doc. 8) be **GRANTED**  to the extent that petitioner's successive claim alleged in Ground One should be **TRANSFERRED** to the United States Court of Appeals for the Sixth Circuit for review and determination whether the district court should be granted authorization to entertain the claim, and petitioner's remaining non-successive claims alleged in Grounds Two and Three should be **DISMISSED** with prejudice as plainly lacking in merit.

2.  Petitioner's motion for emergency injunctive relief (Doc. 4) be **DENIED**.

3.  A certificate of appealability should not issue with respect to the non-successive claims alleged in Grounds Two and Three, which have been adjudicated on the merits herein,

because they do not rise to the level of a "viable claim of the denial of a constitutional right" and are not "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

                        /.s/ *Stephanie K. Bowman*
                        United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

BRIAN KEITH ALFORD,                                   Case No. 1:11-cv-862
     Petitioner

     vs                                             Beckwith, J.
                                                  Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
     Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc