UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BRIAN KEITH ALFORD<br>    Petitioner, | Case No. 1:11-cv-862 |
| | Beckwith, J. |
| vs. | Bowman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | ORDER AND<br>SUPPLEMENTAL REPORT<br>AND RECOMMENDATION |

In the instant habeas corpus action filed pursuant to 28 U.S.C. § 2241, petitioner asserts three grounds for relief. (Doc. 1). In the first two grounds, petitioner challenges parole revocation proceedings, which were initiated when a detainer was lodged in 2003 by the Ohio Adult Parole Authority (OAPA) while petitioner was in federal custody and which concluded when his parole was revoked on his return to Ohio's custody in 2011. In the third ground, petitioner claims that Ohio's "parole guidelines," which were enacted in 1998 after he was convicted and sentenced to indefinite prison terms on state criminal charges, "create a substantial 'risk' of incarceration time the prisoner must serve and violate the Ex Post Facto Clause of the United States Constitution." (*See id.*). Respondent responded to the petition by filing a motion to dismiss. (*See* Doc. 8).

On July 20, 2012, the undersigned issued a Report and Recommendation, recommending that the respondent's motion to dismiss be granted to the extent that (1) Ground One alleges a successive claim within the meaning of 28 U.S.C. § 2244(b)(1), which must be transferred to the Sixth Circuit "for review and determination whether the district court should be granted authorization to entertain the claim;" and (2) the unexhausted claims alleged in Grounds Two and Three should be dismissed with prejudice "as plainly lacking in merit." (Doc. 12, p. 20). In

addressing Ground Three, the undersigned specifically concluded that the Court lacks jurisdiction to consider any claim by petitioner that Ohio's 1998 parole guidelines "will be applied and 'are likely to result in increased incarceration' when he is next considered for parole" because "any opinion regarding a future action that the OAPA may or may not take in deciding whether or not to grant petitioner parole would be merely advisory in nature" and would not be based on a "live case or controversy." (*Id.*, pp. 19-20).

Petitioner filed objections to the Report and Recommendation, wherein he argued in part that the Ohio Parole Board improperly applied the 1998 parole guidelines to him at a parole hearing held on July 20, 2012, the same date that the Report and Recommendation was filed. (*See* Doc. 15, pp. 12-13, 18-21). Because neither the undersigned nor respondent had an opportunity to address petitioner's claim of an *ex post facto* violation at his most recent parole hearing, the District Court issued an Order on September 24, 2012, remanding the matter "to the Magistrate Judge for further review and the issuance of a Supplemental Report and Recommendation concerning Alford's objections with respect to this aspect of Ground Three of his petition." (Doc. 16).

Thereafter, the undersigned issued an Order requiring respondent to file a supplemental return of writ addressing petitioner's new claim stemming from the parole hearing held in July 2012, as well as providing an opportunity to petitioner to file a reply to the supplemental return of writ. (Doc. 17). The parties have filed additional pleadings in accordance with that order. (Docs. 18, 20). Upon review of those submissions, it appears that the matter remanded by the District Court is now ripe for ruling.[1]

---

[1] It is noted that in addition to filing a supplemental return of writ, respondent filed a motion to file additional parole hearing documents under seal for *in camera* inspection, which petitioner opposes. (Docs. 19, 20-21). Because the current record contains sufficient information for the Court to issue a Report and Recommendation regarding petitioner's new claim, respondent's motion has been denied as moot by separate Order issued this date.

As an initial matter, the undersigned reaffirms the recommendations in the prior Report and Recommendation pertaining to the claims alleged in Grounds One through Three of the petition, except as follows: Because petitioner has contended in his objections to the July 20, 2012 Report and Recommendation that the Ohio Parole Board actually applied the 1998 parole guidelines at his recent parole hearing, it now appears that a live case or controversy is presented to the extent that the Court has jurisdiction to consider whether an *ex post facto* violation occurred at that proceeding. Therefore, the portion of the July 20, 2012 Report and Recommendation holding that the Court lacks jurisdiction to consider any claim in Ground Three challenging the application of the 1998 parole guidelines to petitioner at future parole hearings is **VACATED**, but only to the extent that the Court has jurisdiction to consider the claim as it pertains to the July 20, 2012 parole hearing. Upon review of the record as supplemented by the parties, the undersigned remains convinced that the *ex post facto* claim arising from that hearing should be dismissed with prejudice as plainly lacking in merit.

Respondent states in the supplemental return of writ that, contrary to petitioner's contention, the 1998 parole guidelines were not applied by the Ohio Parole Board at petitioner's recent parole hearing because those guidelines were "abandoned" by the OAPA in 2010. (Doc. 18, p. 3). In a recent decision, a court within this District provided the following history of Ohio's discretionary parole guidelines, as gleaned from the Sixth Circuit's decision in *Michael v. Ghee*, 498 F.3d 372, 374 (6th Cir. 2007), an unpublished district court decision, and the Ohio Parole Board's Handbook dated April 1, 2010:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the [OAPA]. It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. . . . Under the new

3

> law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. . . .
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence. . . .
>
> . . . .The OAPA subsequently amended these discretionary guidelines in 2000:
>
> In response to Senate Bill 2, the OAPA revised the parole guidelines in 1998, and again in 2000, to give a projected release date to those inmates who were convicted prior to 1 July 1996 and who did not get the benefit of a definite sentence. These guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record and institutional behavior. The two numbers were then placed on a grid which determined the recommended range of time in terms of the number of months that the inmate should serve before he or she would be considered suitable for parole release ("the guideline range"). The projected release date was set for a period of time within the guideline range. These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score.
>
> . . . .The parole guidelines were again amended in 2007, but ultimately abandoned by the parole board in 2010:
>
> The Ohio Parole Board Guidelines Manual and Matrix, initially developed in 1998, and most recently amended in 2007, was created and used by the Board to promote consistent decision making for a large number of parole eligible inmates…. Ohio's change to a determinate sentencing system in 1996 (Senate Bill 2) has, over time, dramatically transformed Ohio's parole eligible population. Therefore, use of the Ohio Parole Board Guidelines Manual is no longer practical or effective. *Accordingly, after April 1, 2010, the Board will continue to exercise its discretionary release authority solely by reference to Ohio statute and administrative code provisions. The Board will no longer use the Ohio Parole Board Guidelines Manual and Matrix in the release decision process.*

*Berk v. Moore*, No. 2:10cv1082, 2012 WL 3780303, at *6-7 (S.D. Ohio Aug. 31, 2012) (Frost,

4

J.) (footnote and internal citations and quotations omitted) (emphasis added).

In light of this history, it is clear that the 1998 parole guidelines were rescinded long before petitioner was released from federal custody and returned to Ohio in January 2011 for the parole revocation proceedings and the instant habeas corpus action was filed. Therefore, to the extent that petitioner has argued in his objections that those guidelines were used at his recent parole hearing in July 2012, his claim is plainly without merit. *Cf. id.* at *7.

Furthermore, petitioner is unable to prevail on any claim that the Ohio Parole Board violated the Ex Post Facto Clause at the July 2012 parole hearing in determining in the exercise of its discretion by reference to the applicable statutory and administrative code provisions that petitioner was not "suitable" for parole release at that time and continuing petitioner's incarceration for 36 months until the next parole hearing scheduled for July 1, 2015. (*See* Doc. 18, p. 12 & Ex. 1).

"The Ex Post Facto Clause prohibits any law which increases the punishment for a crime, or which produces a significant risk of increasing the punishment for a crime beyond that prescribed when the crime was committed." *McGruder v. Renico,* 58 F. App'x 111, 112 (6th Cir. 2003) (citing *Garner v. Jones,* 529 U.S. 244, 255-56 (2000)); *see also Michael*, 498 F.3d at 384. The Clause, however, does not extend so far as to forbid "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 508 (1995); *see also McGruder*, 58 F. App'x at 112. As the Court noted in *Morales*, "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of disadvantage, nor . . . on whether an amendment affects a prisoner's *opportunity* to take advantage of provisions for early release, . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is

5

punishable." *Morales*, 514 U.S. at 506 n.3 (internal citation and quotation omitted) (emphasis in original). As discussed in the prior Report and Recommendation (*see* Doc. 12, pp. 18-19), the retroactive application of post-sentencing changes in the law governing parole can be shown to violate the Ex Post Facto Clause in "one of two ways." *Michael*, 498 F.3d at 384 (citing *Garner*, 529 U.S. at 255). First, an *ex post facto* violation is established by demonstrating that changes in in a state's provisions governing parole, "on their face, show a significant risk of increased incarceration." *Id.* Second, if the amended provisions "do not by their own terms show a significant risk," an *ex post facto* violation is established if the party seeking relief demonstrates "by evidence drawn from [the amendment's] practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier [law]." *Id.* (quoting *Garner*, 529 U.S. at 255); *cf. Dyer v. Bowlen,* 465 F.3d 280, 291 (6th Cir. 2006) (noting that "even when considering substantive changes to parole provisions, the Supreme Court has relied on evidence of actual disadvantage (or, as stated in *Garner*, a sufficient risk of increased punishment)" for the prisoner).

In *Michael*, which was a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983, the Sixth Circuit affirmed the entry of summary judgment for the defendants on the plaintiffs' *ex post facto* claims because the plaintiff inmates had not met their burden of showing that "a genuine issue of fact exist[ed] regarding whether the retroactive application of [Ohio's] 1998 [parole] guidelines, either on their terms or as applied to plaintiffs, creat[ed] a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Michael*, 498 F.3d at 384. The court reasoned in part that although the plaintiffs had asserted that "they would have ultimately received shorter sentences under pre-1998 practices," they had not provided or cited any evidence regarding those practices. *Id.* at 385. The court concluded that "[w]ithout

6

any evidence of how current parole practices differ from pre-1998 practices, plaintiffs cannot establish a violation of the Ex Post Facto Clause." *Id.*

In a subsequent decision, the Sixth Circuit held that the plaintiff had stated a claim for relief under § 1983 for purposes of surviving a motion to dismiss to the extent that statements had been made by the State of Ohio, which demonstrated that reliance by the parole board on the 1998 guideline "ranges of time for which a defendant might become eligible for parole" increased the minimum time required to be served for many offenses, including the plaintiff's offense. *See Dotson v. Collins*, 317 F. App'x 439, 442 (6th Cir. 2008).  However, as discussed above, the 1998 guidelines were rescinded in 2010 and, therefore, were not consulted or otherwise relied on by the Ohio Parole Board in determining petitioner's eligibility for parole release at the July 2012 hearing.  Furthermore, in contrast to *Dotson* and as in *Michael*, petitioner has not argued, nor is there any evidence in the record even remotely suggesting, that the Ohio Parole Board's recent decision denying parole and continuing petitioner's incarceration for 36 months until he is next considered for parole release created any risk of increased punishment sufficient to trigger *ex post facto* concerns.

In this case, the Ohio Parole Board provided the following "[r]ationale" for its decision:

> The inmate was returned as a parole violator for committing a bank robbery for which he served a federal sentence.  The inmate committed this bank robbery within one year of being paroled for several bank robberies he committed in 1983.  The inmate's offense and supervision histories suggest that the inmate's release would create an undue risk to public safety.  For these reasons, and after weighing the relevant factors, the Board does not consider the inmate suitable for release and assesses a thirty-six month continuance.

(Doc. 18, Ex. 1).  The parole board also concluded that the "above-indicated factors" supported the following reasons for continued incarceration as set forth in Ohio Admin. Code § 5120:1-1-07:  (1) "[t]here is substantial reason to believe that the inmate will engage in further criminal

7

conduct, or that the inmate will not conform to [the] conditions of release;" and (2) "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society." (*Id.*).

In his brief in reply to respondent's supplemental return of writ, petitioner does not even address the *ex post facto* issue that allegedly arose in the July 2012 parole hearing, but rather only reiterates arguments challenging the OAPA's actions that preceded and resulted in the revocation of his parole in 2011, as asserted in Grounds One and Two of the petition. (*See* Doc. 21). Moreover, in his objections to the prior Report and Recommendation, petitioner merely contended that the parole board improperly relied on two factors utilized in the 1998 guidelines to determine the presumptive amount of time the inmate must serve or parole eligibility range—*i.e.*, the seriousness of the inmate's crimes and the "risk of reoffense" based on the inmate's prior criminal conduct and performance on probation and parole. (*See* Doc. 15, pp. 18-19). That argument, however, is unavailing because it does not address how the parole board, in the exercise of its discretion, subjected petitioner to any risk of increased punishment based on its reliance on those two factors without any reference to a presumptive parole eligibility range. Indeed, as one district court pointed out in rejecting a similar claim raised in a § 1983 action, even before petitioner was convicted and sentenced in 1984, "both the nature of the crime and the offender's conduct" have been "appropriately considered" by the parole board "as relevant factors in determining whether to grant parole." *See Ridenour v. Collins*, 692 F. Supp.2d 827, 849-50 (S.D. Ohio 2010); *cf. Swihart v. Wilkinson*, 209 F. App'x 456, 459 (6th Cir. 2006) (in affirming the dismissal of the plaintiff's *ex post facto* claim raised in a § 1983 action, the Sixth

8

Circuit pointed out that the findings of the parole board indicated that it had continued the plaintiff's parole "based not on the guideline range, but on his offense behavior, which is within its discretion").

In cases decided after the 1998 guidelines were rescinded, the courts have uniformly rejected Ex Post Facto Clause challenges to Ohio's parole procedures in the absence of any evidence demonstrating that the procedures "on their face, show a significant risk of increased incarceration" or that "their application result in a longer period of incarceration than under earlier [practices]." *See, e.g., Morehouse v. Mausser*, No. 2:10cv45, 2011 WL 249490, at *5-6 (S.D. Ohio Jan. 26, 2011) (Marbley, J.); *see also Powers v. Collins,* No. 2:09cv501, 2010 WL 5829215, at *6-7 (S.D. Ohio Sept. 27, 2010) (Abel, M.J.) (Report & Recommendation), *adopted*, 2011 WL 665405, at *3 (S.D. Ohio Feb. 11, 2011) (Economus, J.); *Varney v. Collins*, No. 2:09cv576, 2010 WL 4568863, at *5-6 (S.D. Ohio Sept. 1, 2010) (Abel, M.J.) (Report & Recommendation), *adopted*, 2010 WL 4568169 (S.D. Ohio Nov. 3, 2010) (Frost, J.); *Boussum v. Collins*, No. 2:08cv770, 2010 WL 3860566, at *5-6 (S.D. Ohio Sept. 27, 2010) (Smith, J.). *Cf. Greene v. Knab*, No. 2:09cv258, 2010 WL 3522479, at *9 (S.D. Ohio July 30, 2010) (Deavers, M.J.) (Report & Recommendation) (finding no merit to the habeas petitioner's *ex post facto* claim because, despite changes in the statute governing parole procedures, the "Ohio Parole Board retains its full discretion regarding its parole decisions"), *adopted*, 2010 WL 3522477 (S.D. Ohio Sept. 2, 2010) (Graham, J.). The undersigned is persuaded by the following reasoning in *Morehouse, supra*, 2011 WL 249490, at *5-6, which is also applicable to the case-at-hand:

> Ohio's parole system grants considerable decision-making discretion to the parole board. Instead of a deterministic scheme compelling certain results based upon a particular crime and particular time served, it instructs the parole board in what factors it shall take into account, and then grants it the authority to make its own

determination as to whether an inmate should not be released.  One such possible determination is that "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society." . . .  In *Foster v. Booker*, [595 F.3d 353 (6th Cir.), *cert denied*, 131 S.Ct. 225 (2010),] the Sixth Circuit Court of Appeals addressed a similar challenge to Michigan's parole system, which had changed in 1992 to implement tougher standards such as less frequent hearings.  The *Foster* court found, however:

> To the extent that plaintiffs have shown they face a significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its discretion.  The decision whether to grant parole has always been within the Board's discretion. . . .
>
> Despite the fact that the scope of the Board's discretion has remained the same, plaintiffs argue that, in practice, the new Board applied a harsher standard than the old Board when deciding whether to grant parole.  However, plaintiffs' contentions do not make out an ex post facto violation.
>
> If the Parole Board decided within its discretion to get tougher, that could hardly amount to an ex post facto violation as long as it was within the Parole Board's discretion to get tougher.
>
> 595 F.3d at 362.

The Magistrate Judge correctly concluded that plaintiff has offered no evidence, which, if credited by the trier of fact, would demonstrate that the guidelines unconstitutionally increased his sentence.  Although plaintiff maintains that he would have been released earlier under the old guidelines, this statement is pure conjecture. . . .  The . . . decision of the Ohio Parole Board states that Morehouse was not found suitable for release based on his felony conviction for shooting a female victim while on parole for murder.  The decision indicated that releasing plaintiff at that time would not be in the welfare and security of society. . . .  It is within the discretion of [the Ohio Parole Board] to consider the fact that he committed a similar crime when released on parole for his earlier conviction when determining his suitability for release on parole.  Furthermore, simply because his period of incarceration is beyond the minimum time served does not mean that he was entitled to release on parole.

Similarly, in this case, it is clear from the record that no *ex post facto* concerns were

10

triggered at the July 2012 parole hearing.  As in *Morehouse*, the Ohio Parole Board did not commit any *ex post facto* violation and acted within its discretion by basing its decision at that hearing on the fact that petitioner committed a similar crime within a year after his release on parole for his earlier conviction in Ohio stemming from his commission of "several bank robberies."  Therefore, the undersigned recommends that the claim be denied with prejudice as clearly lacking in merit.

If the District Court should disagree with the above recommendation, it is alternatively recommended that the new claim challenging the July 2012 hearing, which arose after petitioner filed the instant petition and his pleadings opposing respondent's motion to dismiss, be dismissed on exhaustion grounds because it appears that no state court has addressed the claim.  *Cf. Dyer v. Morrow*, __ F. App'x __, No. 10-5137, 2012 WL 3893110, at *3-5 (6th Cir. Sept. 7, 2012) (in a habeas case that resulted in the granting of a conditional writ and ordering of a new parole hearing due to the "inadequate record" that had been presented as to whether or not an *ex post facto* violation had occurred at a parole hearing held in 1999, the Sixth Circuit concluded that the district court should not have entertained the petitioner's *ex post facto* challenge to the subsequent hearing held in 2009 because the petitioner had not exhausted the new claim in the state courts); *see also Smith v. Anderson,* No. 1:06cv2923, 2009 WL 312755, at *3, 9-10 (N.D. Ohio Feb. 6, 2009) (holding that an unexhausted *ex post facto* claim belatedly asserted after the petitioner's "traverse" brief was filed was subject to dismissal because it was not "properly part of the instant petition"), *aff'd*, 632 F.3d 277 (6th Cir. 2011).  To the extent that the alternative recommendation is adopted to dismiss the new claim without prejudice based on petitioner's failure to exhaust his state court remedies, it is noted that if petitioner were to file another federal habeas petition after exhausting those remedies, the only relief that petitioner could expect to

receive under the habeas statute would be the issuance of a conditional writ requiring that "a new parole hearing [be] held in accordance with the correct standards." *See Dyer, supra,* 2012 WL 3893110, at *5 & nn.8-9 (citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005)); *Smith, supra*, 2009 WL 312755, at *3, 10 (same).

In *Dotson*, 544 U.S. at 78-82, the Supreme Court pointed out that habeas corpus will not necessarily provide the expected relief of a speedier release from prison in cases involving challenges to state parole eligibility proceedings and that, therefore, prisoners may bring § 1983 civil actions in such cases. Specifically, the Court reasoned in pertinent part:

> Success for [one habeas petitioner] does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success [for another petitioner] means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. Because neither . . . claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus.'"

*Id.* at 82 (emphasis in original). Therefore, to the extent that petitioner may wish to seek federal review of his claim after exhausting his state court remedies, the claim may be more appropriately brought as a claim under 42 U.S.C. § 1983 rather than as a habeas claim. *Cf. Smith, supra,* 2009 WL 312755, at *3, 10.

Accordingly, in sum, the undersigned concludes that although petitioner has presented a live case or controversy to the extent he alleges as part of Ground Three of the petition that an *ex post facto* violation occurred at his parole hearing in July 2012, it is clear from the record that no *ex post facto* concerns were triggered at that hearing. Therefore, the claim should be denied with prejudice as plainly lacking in merit. Alternatively, because petitioner has not presented the new claim to the state courts for their consideration, the claim should be dismissed without prejudice for failure to exhaust state court remedies.

## IT IS THEREFORE ORDERED THAT:

The undersigned's prior Report and Recommendation issued July 20, 2012 (Doc. 12) is **VACATED** only to the extent that the Court has jurisdiction to consider petitioner's *ex post facto* claim alleged in Ground Three of the petition as it pertains to a parole hearing that was held on July 20, 2012.  In all other respects, the July 20, 2012 Report and Recommendation remains in effect.

## IT IS THEREFORE RECOMMENDED THAT:

Petitioner's claim in Ground Three of an *ex post facto* violation occurring at the July 20, 2012 parole hearing be denied with prejudice on the ground that it is plainly without merit.  Alternatively, the claim should be dismissed without prejudice on the ground that petitioner has not exhausted the claim in the state courts.[2]


    s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[2] It is noted that dismissal of the claim without prejudice on exhaustion grounds, as opposed to a stay of the action, is appropriate in this case.  First, as discussed above, the writ of habeas corpus is not the exclusive remedy that petitioner may pursue to challenge the July 2012 parole hearing in federal court.  Second, because the claim arose only recently *after* petitioner filed his habeas corpus petition and pleadings opposing respondent's motion to dismiss, no habeas statute-of-limitations concerns are triggered if the instant action is dismissed without prejudice instead of stayed.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN KEITH ALFORD,
    Petitioner

    vs

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent

Case No. 1:11-cv-862

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc