UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brian Keith Alford, : Case No. 1:11-cv-862
    Petitioner, :
 :
vs. :
 :
Warden, Lebanon Correctional Institution, :
 :
    Respondent. :

**ORDER**

This habeas corpus proceeding is before the Court upon a review of Brian Alford's objections to the Magistrate Judge's First and Supplemental Reports and Recommendations.  (Docs. 12, 26)    Both of the Reports address the Respondent's motion to dismiss Alford's petition because it is his second and successive petition, and because Alford failed to exhaust state remedies regarding some of his claims.  (Doc. 8)

The Magistrate Judge's First Report (Doc. 12) reviewed in detail the procedural background to Alford's current petition, which he filed in December 2011 and raised three grounds for relief.  (Doc. 1)  The Magistrate Judge ultimately concluded that Ground One was a successive claim that Alford raised in his prior habeas petition, and should therefore be transferred to the Sixth Circuit Court of Appeals for its review.  The Magistrate Judge also concluded that Grounds Two and Three were not properly exhausted, but nonetheless should be dismissed with prejudice because they lack merit.  (Doc. 12 at p. 20)   The Magistrate Judge also recommended that Alford's emergency motion for injunctive relief (Doc. 4) be denied.

Alford objected to the recommendations with respect to Grounds Two and Three, and argued that his entire petition should be transferred to the Sixth Circuit for its review. Ground Three of the petition claimed in part that Ohio's 1998 amended parole guidelines violate the Ex Post Facto clause insofar as those guidelines might be applied to his future parole hearings; the Magistrate Judge concluded that the court lacked jurisdiction to consider such a hypothetical claim. Alford attached to his objections a number of exhibits, among which were documents reflecting that the Ohio Parole Board held a parole hearing on July 20, 2012, the same day that the Magistrate Judge issued her First Report. Out of an abundance of caution, because this is Alford's second habeas petition, this Court referred this aspect of Alford's objections back to the Magistrate Judge for additional briefing and a Supplemental Report. (See Doc. 16)

In that Supplemental Report, the Magistrate Judge ultimately concluded that Alford's claim asserted in Ground Three, that the Ohio Parole Board's application of Ohio's 1998 parole guidelines to his July 2012 hearing violated the Ex Post Facto clause, was unexhausted but was meritless and should be dismissed.

Alford filed objections to the Supplemental Report contending that all of his claims should be transferred to the Sixth Circuit, and/or found to be meritorious. (Doc. 26)

Factual and Procedural Background

The Magistrate Judge's original report carefully and correctly set forth the facts and procedural history of Alford's pending petition (see Doc. 12 at pp. 1-8), and this Court adopts that discussion here. For purposes of ruling on Alford's objections, the salient facts are that Alford was found guilty of four counts of aggravated robbery and

-2-

robbery in Ohio state court in 1984. He was sentenced to consecutive terms of incarceration, and released on parole in December 1999. On June 6, 2000, the Ohio Adult Parole Authority issued a parole violation notice based upon a federal warrant for Alford, which in turn was based on new federal bank robbery charges. He was arrested on the federal warrant on June 22, 2000, and indicted by a federal grand jury in this district a few weeks later. Alford was convicted after a federal jury trial, and sentenced in December 2002 to 144 months. Following his conviction, the Ohio parole authority issued a state parole violation warrant; a federal detainer was lodged, and his tentative release date from federal custody was estimated to be December 5, 2010.

In 2005, prior to his release, Alford filed a motion in the state trial court, seeking dismissal of the parole violation warrant, arguing that it violated the Interstate Agreement on Detainers. The trial court denied the motion. He filed a second motion a few weeks later, arguing that the Ohio parole authorities waited too long to file the parole violation warrant because he had been held in the local county jail between his initial federal arrest in June 2000 and his December 2002 federal sentencing hearing. The court denied that motion, finding it lacked jurisdiction to address Alford's parole concerns. Alford did not appeal these rulings.

On August 13, 2008, Alford filed a federal habeas petition in the Northern District of Ohio, raising a single claim that the Ohio parole warrant was unlawful and untimely under Ohio law, and violated his due process rights. The district court dismissed the petition, holding (as relevant here) that Alford was in federal custody from June 22, 2000 forward, and any due process rights which might attach to his state revocation hearing would accrue when he was released to state custody upon completion of his

federal sentence. The court also rejected Alford's contention that the detainer lodged with the federal authorities violated any of his rights. Alford appealed to the Sixth Circuit, which affirmed the district court's denial of Alford's petition on June 19, 2009. In July 2010, while still in federal custody, Alford filed a Rule 60(B)(4) motion in the federal habeas district court. The trial court found that it lacked jurisdiction to consider Alford's motion, given that Alford appealed the denial of his original petition, a decision the Sixth Circuit affirmed.

After his unsuccessful bid to obtain federal habeas relief, Alford returned to state court in November 2009, filing a motion with the criminal trial court for parole release. That motion was denied and Alford did not pursue an appeal. On January 7, 2011, Alford was released from federal custody and returned to state custody. The Ohio Department of Rehabilitation and Corrections calculated Alford's "lost time", and notified Alford on January 13 that a parole violation hearing was scheduled for February 7, 2011. At that hearing, Alford's parole was revoked by an OAPA hearing officer, who recommended that he serve an additional 18 months before another eligibility review. The Parole Board adopted that recommendation on March 20, 2011, scheduling a review hearing for July 2012.

Alford filed his current habeas petition in this Court in December 2011, raising three grounds for relief:

> **Ground One:** The passage of four months without a determination of parolee's status as a violator was unreasonable and petitioner is entitled to immediate release from custody under the terms and conditions of his original parole, Ohio Rev. Code 2965.21.
>
> **Ground Two:** Petitioner is entitled to have the period of his incarceration in Montgomery County Jail during which he was a declared parole violator

credited to his time served.

**Ground Three:** The new parole guidelines create a substantial "risk" of increasing time the prisoner must serve and violate the Ex Post Facto Clause of the United States Constitution.

(Doc. 1 at p.2)

Respondent filed a motion to dismiss the petition, because Grounds One and Three were, or could have been, raised in Alford's first habeas petition. Respondent also argued that Alford failed to exhaust his claims by seeking a writ of mandamus or habeas corpus, which are available in Ohio to challenge parole decisions. (Doc. 8) The Magistrate Judge concluded that Alford's first claim was clearly successive to his first habeas petition, pursuant to 28 U.S.C. §2244(b)(1), because Alford raised the same arguments about his parole in his only ground for relief in the 2008 petition he filed in the Northern District of Ohio. That claim was rejected on the merits by the district court, whose decision was affirmed by the Sixth Circuit. The Magistrate Judge recommended, therefore, that the first claim be transferred to the Sixth Circuit pursuant to 28 U.S.C. §1631, for its consideration under 28 U.S.C. §2244(b)(3). Alford does not object to this conclusion.

The Magistrate Judge agreed with Respondent that Alford's second claim is unexhausted, but recommended that the exhaustion requirement be excused because the claim plainly lacks merit. Alford contends that the thirty months he was held in federal custody awaiting trial on the bank robbery charges from 2000 to 2002 should have been credited by OAPA in determining his parole revocation sentence imposed at the February 7, 2011 revocation hearing. The Magistrate Judge notes that this period of federal custody was credited against Alford's federal sentence. But the fact that the

federal authorities housed Alford in the county jail while awaiting his federal trial does not require the ODRC to give him "credit" in calculating the lost time for purposes of his parole violation hearing. Moreover, this claim solely raises an issue of state law which is not cognizable in federal habeas proceedings.

With respect to Ground Three, Alford argued that the OAPA applied "new" parole Guidelines at his 2011 revocation hearing in a manner that unlawfully increased his sentence and violated the Ex Post Facto clause. The Magistrate Judge cited Michael v. Ghee, 498 F.3d 372 (6th Cir. 2007), where the Sixth Circuit discussed the background of Ohio's parole guidelines and the changes in Ohio's sentencing system over time, as they pertained to the plaintiff's Section 1983 claims in that case:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. See Ohio Rev. Code. § 5120 et seq. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme. Ohio Rev. Code § 5120.021(A).
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

Michael v. Ghee, 498 F.3d at 373-374.  The court also discussed recent Supreme Court authority concerning Ex Post Facto concerns that can arise in the application of amended parole guidelines to the plaintiff-inmates, and held that the relevant inquiry

> ... is whether retroactive application of the 1998 Ohio guidelines creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." ...  Plaintiffs can satisfy this burden in one of two ways.  First, plaintiffs can establish an ex post facto violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. ...  Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]."  ...  Plaintiffs need not show an actual increase in punishment, but rather a "sufficient risk" of increased  punishment.

Id. at 384 (internal citations omitted).

Alford was sentenced before July 1, 1996, under Ohio's indeterminate sentencing scheme.  But with respect to Alford's February 2011 parole hearing, the Magistrate Judge concluded that there was no evidence establishing or suggesting that OAPA considered or applied the 1998 guidelines discussed in Michael.  And even if the board did consider them in some fashion, the Magistrate Judge concluded that Alford has not demonstrated that those guidelines created a "significant risk" of increased incarceration for him, or that he faces a longer period of incarceration than he faced under earlier parole guidelines and procedures.

Alford's most recent parole hearing, held on July 20, 2012, is the subject of the Magistrate Judge's Supplemental Report.  The supplemented record contains the Parole Board's written decision denying Alford release, and requiring him to serve an additional 36 months before his next parole hearing.  The Board stated its rationale for

this decision:

> The inmate was returned as a parole violator for committing a bank robbery for which he served a federal sentence. The inmate committed this bank robbery within one year of being paroled for several bank robberies he committed in 1983. The inmate's offense and supervision histories suggest that the inmate's release would create an undue risk to public safety. For these reasons, and after weighing the relevant factors, the Board does not consider the inmate suitable for release and assesses a thirty-six month continuance.

(Doc. 15, Exhibit 1 at CM/ECF PAGE ID 583). The Board cited two factors supporting Alford's continued incarceration: "(A) There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under [Ohio Admin. Code] 5120:1-1-12. (B) There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society." Id.

The Magistrate Judge's Supplemental Report states that the 1998 parole guidelines that Alford challenges here, and that were described in Michael v. Ghee cited above, were abandoned by the OAPA in 2010. The Report cites Berk v. Moore, 2012 U.S. Dist. LEXIS 124115 (S.D. Ohio Case No. 2:10-cv-1082, Dkt. 153, Order Adopting Report and Recommendation, August 31, 2012)(Frost, J.), which was a case brought by Ohio inmates raising an Ex Post Facto challenge to the Ohio Parole Board's use of its Handbook and Guidelines Manual in reaching parole decisions. The court explained that the Parole Board stopped using the 1998 parole guidelines before the plaintiffs filed their lawsuit in December 2010. The district court quoted the Board's Handbook which

clearly states: ""Accordingly, after April 1, 2010, the Board will continue to exercise its discretionary authority solely by reference to Ohio statute and administrative code provisions. ... Indeed, the Handbook, which appears to be simply a compilation of various statutes and laws, goes on to detail certain factors that the parole board must, under O.A.C. § 5120:1-1-07, consider when determining an inmate's suitability for release." Id. at *10-11. Thus it is clear that the 1998 parole guidelines had been abandoned by OAPA prior to the time of Alford's February 2011 parole hearing, and that they were not utilized during the July 2012 hearing.

The Magistrate Judge also rejected Alford's Ex Post Facto challenge to the parole board's July 2012 decision to extend Alford's incarceration for another 36 months. Alford suggests that the board's reliance on the factors cited in its decision (the seriousness of Alford's crimes, and the risk that he will engage in further criminal conduct) was somehow improper. But Alford does not explain how the board's reliance on those factors in exercising its discretion to deny him parole subjected him to a significant risk of increased punishment, or resulted in a longer period of incarceration than he would have faced under pre-1998 parole guidelines. In addition, the Magistrate Judge cited a number of cases from this district that have uniformly rejected Ex Post Facto challenges to the current Ohio parole procedure after the 1998 guidelines were rescinded. (See Doc. 22 at p. 9, collecting cases). The Magistrate Judge ultimately recommended that exhaustion of this claim be excused, and that Alford's Ex Post Facto challenge to his July 2012 parole hearing raised in Ground Three of his petition be denied on the merits.

In his objections to the first Report, Alford again argues that OAPA violated his

constitutional rights when it failed to hold a parole revocation hearing within a "reasonable time" after the parole violation notice was issued in June 2000. He suggests that Ohio law requires such a hearing to be held within sixty days, or no more than 120 days from the violation notice. With respect to Ground Two, he cites State ex rel Moon v. Ohio Adult Parole Authority, 22 Ohio St.2d 29 (1970), where the Ohio Supreme Court granted mandamus relief, requiring OAPA to credit petitioner with time served for the period he was incarcerated in the county jail on new charges, because his parole had been revoked during that time but OAPA made no effort to regain custody of him. But Alford fails to recognize that he was arrested by the federal authorities on federal charges in June 2000, and held in federal custody from that time until he was sentenced in December 2002. Moreover, the essence of this claim is that OAPA violated state law; this Court agrees with the Magistrate Judge that Ground Two does not raise a federal constitutional claim that is cognizable in this habeas proceeding.

With respect to Ground Three, Alford's initial objections simply restated his arguments that the 1998 guidelines were applied to his 2011 parole hearing. These objections are overruled for the reasons discussed above. He also suggested that the extension of his incarceration poses an "immediate threat of danger" to him because he is housed in a higher-security institution; he has been exposed to "deadly force by unprofessional staff;" and he suffers from high blood pressure. (Doc. 15 at 23-26) None of these statements support a cognizable Ex Post Facto claim, and any complaints about the conditions of his confinement should be addressed to the institutional grievance process.

Alford's objections to the Supplemental Report (Doc. 26) merely reiterate his arguments that OAPA failed to timely initiate revocation proceedings against him in 2000, which he contends violated his due process rights. He suggests that due to OAPA's delay, he could not be released from jail in order to gather evidence and locate witnesses who would have established his actual innocence on the federal bank robbery charges. These arguments, if relevant at this point, at best concern Ground One of his petition, which is being referred to the Sixth Circuit.[1] Alford also objects to the dismissal of Grounds Two and Three of his petition because they are "interrelated" with Ground One, and should also be referred to the court of appeals. With respect to his Ex Post Facto argument, he asserts that the parole guidelines that were in effect on February 7, 2011 required "only zero to nine months for violations," yet he received an eighteen-month additional term of incarceration. (Doc. 26 at 5) There is absolutely no support in the record for this assertion, and based upon the authorities discussed above, it is plainly incorrect.

## CONCLUSION

As required by 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Alford's objections to the Magistrate Judge's First and Supplemental Reports lack merit, and are therefore overruled. The Court adopts the

---

[1] The Court also notes that the docket sheet of the federal criminal case against Alford reflects several motions he filed seeking pre-trial release which were uniformly denied by the district court. See, e.g., Order of February 11, 2002, concluding "by clear and convincing evidence there exists no condition or combination of conditions such as reasonably will assure the appearance of the Defendant Brian K. Alford as required and the safety of the community." (Doc. 8, Exhibit 8 at CM/ECF PAGEID 98)

Magistrate Judge's recommendations in full.

Respondent's motion to dismiss (Doc. 8) is granted in part.  The successive claim alleged in Ground One of Alford's petition is hereby **transferred** to the United States Court of Appeals for the Sixth Circuit, pursuant to 28 U.S.C. §2244(b)(3), for its determination of whether this Court is authorized to consider that claim.

With respect to Grounds Two and Three of Alford's petition, this Court concludes that exhaustion of state remedies should be excused and the claims dismissed with prejudice because they plainly lack merit, pursuant to 28 U.S.C. §2254(b)(2).

Alford's emergency motion for injunctive relief (Doc. 4) is denied.

The Court finds that a certificate of appealability should not issue, because reasonable jurists would not find it debatable whether those claims should be resolved in a different fashion, and whether the issues Alford presented are adequate for further proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

The Court certifies, pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would not be be taken in good faith, and therefore denies Alford leave to appeal in forma pauperis upon a showing of financial necessity.  See Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

THIS CASE IS CLOSED.

DATED: February 5, 2013              s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Senior Judge
                                     United States District Court